IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| DIAMOND SPORTS NET, LLC, *et al.*,[1] | Case No. 23-90126 (CML) |
| Reorganized Debtor. |  |

**APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Miami Dolphins, Ltd. ("Miami Dolphins"), pursuant to 11 U.S.C. § 503(b) and the Confirmation Order (defined below), hereby moves for entry of an order allowing and requiring

---

[1] The Reorganized Debtor's service address for purposes of this chapter 11 case is: c/o Main Street Sports Group, LLC, 2960 Post Road, Southport, CT 07890. The Reorganized Debtor's chapter 11 case was previously jointly administered under the chapter 11 case of Diamond Sports Group, LLC, Case No. 23-90116 (CML).

1

payment of an administrative expense in the amount of $175,048.50 for post-petition television broadcasting rights that were granted to the Debtors for which the Debtors have failed to pay (the "Motion"), and in support states:

## Jurisdiction and Venue

1. The Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Miami Dolphins confirms its consent, pursuant to rule 7008-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### A. The Bankruptcy Cases

3. On March 14 and 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On March 15, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

4. On November 14, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtors' Disclosure Statement Supplement on a Final Basis and (II) Confirming the Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (the "Confirmation Order")[Dkt. No. 2671], which, among other things, approved and confirmed the

*Debtors' First Amended Joint Chapter 11 Plan of Reorganization* (the "Plan")(attached as Ex. 1 to the Confirmation Order).

5. On January 2, 2025, the Debtors filed the *Notice of (I) Entry of Order Approving the Debtors' Disclosure Statement Supplement and Confirming the Debtors' First Amended Joint Chapter 11 Plan of Reorganization and (II) Occurrence of Effective Date* (the "Notice")[Dkt. No. 2836].

6. Pursuant to the Notice, the "Effective Date" (as defined in the Plan) occurred on January 2, 2025, and the deadline to file all requests for payment of an Administrative Claim (other than a Professional Fee Claim) is no later than February 3, 2025. Thus, this Motion is timely.

**B. The Relationship Between Miami Dolphins and Diamond Sports**

7. On or about August 1, 2022, Miami Dolphins and Diamond Sports Net Florida, LLC ("Diamond Sports") entered into a Preseason Games and Ancillary Programming Telecast Rights Agreement (the "Agreement").[2]

8. Pursuant to the Agreement, Miami Dolphins provided Diamond Sports with a license of television broadcasting rights to Preseason Games for the 2022, 2023, and 2024 National Football League ("NFL") Preseasons and certain related television broadcasting rights to ancillary programming.

9. The Agreement required Diamond Sports, *inter alia*, to use commercially reasonable efforts to distribute a minimum of three Miami Dolphins NFL Preseason Games per Contract Year on its regional sports network formerly known as Bally Sports Florida.[3]

---

[2] A true and correct copy of the Agreement is attached hereto as **Exhibit A**.
[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Agreement.

10. Miami Dolphins and Diamond Sports each performed under the Agreement for the 2022 Contract Years and 2023 Contract Year. Indeed, even after the Petition Date, on or about August 29, 2023, Diamond Sports made the required payment of $169,950.00 for the 2023 Contract Year to Miami Dolphins.

11. Moreover, after the Petition Date, on or about September 11, 2023, Diamond Sports entered into a Letter Agreement with Miami Dolphins whereby Miami Dolphins granted a license for Diamond Sports to distribute additional ancillary programming (the "Fish Tank" television program).

12. Given the uncertainty of these bankruptcy cases and the challenges that were facing the Debtors, in or about January 2024, Miami Dolphins reached out to Diamond Sports regarding the 2024 Contract Year under the Agreement. During a phone conversation on or about January 18, 2024, Diamond Sports advised that they had no intention to reject the Agreement; to the contrary, Diamond Sports reaffirmed that it would continue its contractual relationship with Miami Dolphins and, in fact, were interested in negotiating an extension of the Term of the Agreement beyond the 2024 Contract Year. Additionally, Diamond Sports advised that South Florida was one of the Debtors' best-performing markets and Miami Dolphins did not need to worry about payment and performance by Diamond Sports under the Agreement for the 2024 Contract Year.

13. Thereafter, during a phone conversation in or around April 2024, Diamond Sports again confirmed its intention to extend the Term of the Agreement beyond the 2024 Contract Year.

14. These continued representations and assurances were critical to Miami Dolphins. Timing and notice were essential to Miami Dolphins because it would take approximately 3 – 6 months to locate and negotiate with a new partner for the 2024 Contract Year in the event Diamond Sports were to reject the Agreement and fail to perform its obligations under the Agreement.

15. Given Diamond Sports' representations and assurances, Miami Dolphins did not file a motion seeking to compel assumption or rejection of the Agreement at that time and did not seek out alternative contract partners for the upcoming 2024 Contract Year.

16. Consistent with the Agreement, on or about August 2, 2024, Miami Dolphins delivered an invoice in the amount of $175,049.00 for the 2024 Contract Year to Diamond Sports (the "Invoice"). Payment of the Invoice was due on September 1, 2024.

17. Miami Dolphins 2024 NFL Preseason Games were August 9, 17, and 23, 2024. Under the Agreement, Diamond Sports had the license and requirement to distribute each of these Games and deliver ancillary programming.

18. On or about August 14, 2024, after the start of the NFL Preseason, Diamond Sports, for the first time and despite its repeated assurances, advised Miami Dolphins that it did not intend to perform under the terms of the Agreement for the 2024 Contract Year and would not broadcast the Preseason Games or related ancillary programming consistent with the Agreement. While advising Miami Dolphins that it intended to breach the Agreement, Diamond Sports also attempted to negotiate different terms for the 2024 Contract Year, including a reduction of the Invoice amount. Diamond Sports' actions were contrary to all of their prior representations and assurances provided to Miami Dolphins.

19. Given the timing of Diamond Sports' change of position and decision to not perform under the Agreement, Miami Dolphins was incapable of finding a new partner to perform for the 2024 Contract Year—the exact situation that Miami Dolphins attempted to avoid by previously communicating with Diamond Sports.

20. Months later, the Debtors ultimately "rejected" the Agreement as of the Effective Date of the Plan. However, at the time of rejection, Miami Dolphins already had performed by

providing Diamond Sports with valuable license rights that benefitted Diamond Sports and the Debtors' estates.

21.  It is patently unfair and unjust for Diamond Sports to have accepted the benefits under the Agreement for the 2024 Contract Year without providing Miami Dolphins with compensation for its performance under the Agreement or providing Miami Dolphins with the opportunity to enter into a new agreement with a different partner to mitigate any potential damages.

## Argument

22.  As other parties have noted in these bankruptcy cases, 11 U.S.C. § 503 provides for the allowance and payment of administrative expenses incurred by a debtor during a bankruptcy case. The rationale underlying Code § 503 is straightforward: ***third parties will not provide products or services essential for a debtor to operate its business if they will not be compensated in full.*** Instead, "[s]ection 503 requires that such claims be given priority, therefore inducing third parties to extend credit and enhancing the likelihood of a successful reorganization." *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992) (quoting *In re Coastal Carriers Corp.*, 128 B.R. 400, 403 (Bankr. D. Md. 1991)). Consequently, where a "debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984).

23.  Here, as noted above, Miami Dolphins provided Diamond Sports with valuable post-petition services pursuant to the Agreement—*i.e.*, the rights to broadcast Miami Dolphins NFL Preseason Games and ancillary programming (the "Coach's Show," the "RSN Exclusive Series," "Under the Lights," and the "Fish Tank"). It is undisputed that Diamond Sports accepted

6

these benefits and, in fact, paid Miami Dolphins for the post-petition 2023 Contract Year. Diamond Sports' rejection of the Agreement did not occur until *after* Diamond Sports already had received valuable benefits under the Agreement for the 2024 Contract Year, including the right to broadcast all three of the Miami Dolphins Preseason Games.

24. Section 503 requires the Debtors to pay for their obligations owed under the Agreement for the post-petition benefits received. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (debtor must pay for the reasonable value of services it continues to receive under a contract while it is deciding to reject or assume it); *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 443 (5th Cir. 2019) (the knowing and voluntary post-petition acceptance of goods or services requires paying the full and ordinary costs of such goods and services, explaining that when a debtor accepts services from a third party without paying for them, the debtor-in-possession itself caused legally cognizable injury, and the resulting claims for compensation are entitled to first priority) (internal citations omitted). The Debtors should not be permitted to have induced Miami Dolphins to continue to perform post-petition under the Agreement by providing Diamond Sports with valuable services while at the same time not affording Miami Dolphins the opportunity to mitigate any damages for Diamond Sports' non-performance, and then refusing to pay Miami Dolphins for the value of the benefits received. Miami Dolphins is entitled to an administrative claim in the contract amount of $175,048.50.

**WHEREFORE**, Miami Dolphins, Ltd. respectfully requests entry of an order (i) approving this Motion; (ii) awarding Miami Dolphins, Ltd. an administrative expense in the amount of $175,048.50; (iii) directing the immediate payment of the administrative expense; and (iv) granting such other and further relief as the Court deems just and appropriate.

Dated: February 3, 2025

Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Attorneys for Miami Dolphins, Ltd.*
201 East Las Olas Blvd., Suite 2200
Fort Lauderdale, Florida 33301
Tel.: 954-524-5505
Fax: 954-524-5506
VAlexander@shutts.com

By: /s/ Vincent F. Alexander
    Vincent F. Alexander
    SDTX Fed. No. 3383452

## CERTIFICATE OF SERVICE

**I CERTIFY** that on February 3, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or pro se parties who are authorized to receive electronically Notice of Electronic Filing in these bankruptcy cases.

By: /s/ Vincent F. Alexander
    Vincent F. Alexander